IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| USAA LIFE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-3401 |
| | § | |
| NATALIE ANDERSON, *et al*., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

H.R.A., C.M.A., J.W.A. IV, and A.G.A. are minors living in California. (Docket Entry No. 8 at ¶¶ 3–6). On February 17, 2021, their father, United States Navy Petty Officer First Class John William Anderson III, died of natural causes. (*Id.* at ¶¶ 9, 12). Anderson had designated all four of his children as the beneficiaries of the two life insurance policies issued to him by USAA Life Insurance Company. (*Id.* at ¶ 13). Policy One provided a $1,000,000 death benefit, and Policy Two provided a $500,000 death benefit. (*Id.*). Anderson's children asserted claims to the benefits under both policies through their legal guardian, Laurie Kelly. (*Id.* at ¶ 14). Natalie Anderson, the surviving spouse, submitted rival claims to $500,000 of Policy One and $250,000 of Policy Two. (*Id.* at ¶ 15).

USAA paid the uncontested proceeds under both policies to the Anderson children, but it has not been able to resolve the competing claims to the $500,000 amount of the Policy One proceeds and the $250,000 amount of the Policy Two proceeds that Natalie Anderson also seeks. As with most interpleader actions, USAA does not contest that it owes the life insurance proceeds to someone, but because it cannot decide who that someone is, this interpleader action followed.

The money is deposited, and USAA is no longer a party. The court set an expedited scheduling and docket control order on the assumption that no dispositive motion was likely. (Docket Entry No. 23).

But Natalie Anderson has moved for summary judgment. (Docket Entry Nos. 26, 27). She clarifies that she does not seek half of the proceeds of Policy One. For that policy, Natalie Anderson seeks only reimbursement for half of the premiums paid during the marriage, arguing that the payments were from community property. Natalie Anderson does seek half of the proceeds of Policy Two, arguing that it is subject to community property division. Kelly, on behalf of the Anderson children, has responded and moved for a continuance of the motion, arguing that time for discovery is now necessary. (Docket Entry Nos. 28, 31). Natalie Anderson has responded to the motion for continuance. (Docket Entry No. 32).

Based on the motions and responses; and the applicable law, the court grants the motion for continuance of the Rule 56 motion and denies the Rule 56 motion without prejudice to reassertion after discovery. The reasons are explained below.

**I.   Background**

United States Navy Petty Officer First Class John Williams Anderson III purchased Policy One on August 28, 2015. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 4). Anderson named his four children, H.R.A., C.M.A., J.W.A. IV, and A.G.A, as the beneficiaries. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 4). Anderson married Natalie in July 2017. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 4). The first premium payment made after the marriage was in June 2018. Anderson made the premium payments on Policy One from their joint marital checking account until he died on February 17, 2021. The monthly premium payment was $159.56, totaling

$5,265.48 in premium payments from June 2018 to February 2021. (Docket Entry Nos. 26-2, 26-5).

Anderson purchased Policy Two on December 13, 2020, during his marriage to Natalie. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 4). Anderson again named his four children as the beneficiaries. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 4). The parties dispute whether Anderson used community property funds to make three policy premium payments before he died and whether he told Natalie about the policy. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 8).

Problems had begun to arise in the marriage shortly before Anderson was issued Policy Two. Kelly asserts, and requests additional discovery to show, that on November 6, 2020, Natalie Anderson sent a text stating that she had moved out of the home that she had shared with Anderson. (Docket Entry No. 28 at 4). Natalie Anderson bought her own home, with a title deed only in her name, on December 17, 2020, despite obligating both her and Anderson on the purchase money loan. (Docket Entry Nos. 28-3, 28-4). Kelly asserts, on information and belief, that Anderson was planning to move himself and his children to College Station, where he had been offered a new job. (Docket Entry No. 28 at 4). On December 21, 2020, Natalie Anderson filed for divorce in Montgomery County. (Docket Entry No. 28-11).

Anderson died unexpectedly on February 17, 2021, before the divorce was finalized. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 5). Probate was filed in Montgomery County. (Docket Entry No. 28-5). Anderson's will named his four children as the beneficiaries of his estate. (Docket Entry No. 28-2).

## II. The Legal Standards

### A. The Rule 56 Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

B.     **The Texas Inception of Title Rule**

Community property is "property, other than separate property, acquired by either spouse during the marriage." TEX. FAM. CODE § 3.002. Separate property is: "(1) the property owned or claimed by the spouse before marriage; (2) the property acquired by a spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during the marriage." *Id.* § 3.001.

"Generally, whether property is separate or community is determined by its character at inception, and this general rule applies to life insurance policies." *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). Under this "inception of title" rule, insurance policies are "presumed to be community property" if "issued during the marriage." *Id.*

### III. The Summary Judgment Evidence

In support of her motion, Natalie Anderson submits the following summary judgment evidence:

- a copy of Policy Two, (Docket Entry No. 26-1);

- bank statements from the joint Chase Bank Acct. No 000000742338924, showing premium payments for Policy One from June 2018 through February 2021, (Docket Entry No. 26-2);

- a bank statement from the joint Chase Bank Acct. No. 000000742338924, showing four different transfers in the amount of $5,000.00 each to USAA Savings Account No. 0103811427 during November 2021, (Docket Entry No. 26-3);

- a February 2021 bank statement from USAA Savings Account No. 0103811427, showing the premium payment using community funds for Policy Two, (Docket Entry No. 26-4);

- Natalie Anderson's affidavit, (Docket Entry No. 26-5); and

- J. Dustin Causey's attorney fee affidavit, (Docket Entry No. 26-6).

In support of her response to Natalie Anderson's summary judgment motion, Kelly submits the following summary judgment evidence:

- the Scheduling and Docket Control Order, dated March 8, 2022, (Docket Entry No. 28-1);

- Anderson's Last Will and Testament, dated July 30, 2015, (Docket Entry No. 28-2);

- a warranty deed with vendor's lien, dated December 17, 2020, (Docket Entry No. 28-3);

- a deed of trust, dated December 17, 2020, (Docket Entry No. 28-4);

- an order admitting Anderson's will to probate and issuance of letters of testamentary, dated March 25, 2021, (Docket Entry No. 28-5);

- letters of guardianship of the estate, (Docket Entry No. 28-6);

- letters of guardianship of the person, (Docket Entry No. 28-7);

- executor's petition for declaratory judgment, filed June 11, 2021, (Docket Entry No. 28-8);

- preliminary inventory list and list of claims, filed December 1, 2021, (Docket Entry No. 28-9);

- order approving preliminary inventory list and list of claims, filed December 3, 2021, (Docket Entry No. 28-10);

- Cause No. 20-12-15591 Register of Actions, (Docket Entry No. 28-11); and

- an affidavit by Deborah A. Newman, (Docket Entry No. 28-12).

IV. **Analysis**

   A. **Policy One Premiums**

Natalie Anderson does not dispute that Policy One, which was purchased before her marriage to Anderson, is his separate property, and that the proceeds belong to the four Anderson children. Natalie Anderson does argue that she is entitled to reimbursement of half of the premiums that Anderson paid from June 2018 to February 2021, because he paid the premiums using their joint community property bank account. Kelly does not dispute that the premium payments for Policy One were from community funds. She instead argues that to the extent Natalie

6

Anderson seeks reimbursement, she must seek it from the estate, in probate court, not in this litigation.

Natalie Anderson relies on *McCurdy v. McCurdy*, 372 S.W.2d 381 (Tex. App.—Waco 1963, writ ref'd), and *Camp v. Camp*, 972 S.W.2d 906 (Tex. App.—Corpus Christi 1998, rev. denied). In *McCurdy*, the decedent was issued two life insurance polices that named his estate as his beneficiary before he married his wife. *Id.* at 382. During the decedent's marriage, he paid $657.60 in premiums using community funds. *Id.* The Texas Court of Civil Appeals noted the Texas inception-of-title rule that if "either spouse before marriage procures a policy of life insurance on his own or another's life, in his favor or in favor of his estate, the policy and its proceeds are his separate property. . . [and h]is rights to the proceeds date from the policy." *Id.* at 383–84 (citation omitted). The court recognized that under such circumstances, "the community estate is entitled to reimbursement on the basis to premiums paid with community funds." *Id.* at 384; *see also Pritchard v. Snow*, 530 S.W.2d 889, 891, 893 (Tex. App.—Houston [1st Dist.] 1975, writ ref'd) (adopting the *McCurdy* reasoning).

In *Camp*, the insured-decedent purchased a life insurance policy before he was married, naming his mother as his beneficiary. The decedent did not change the beneficiary after he married his wife. 972 S.W.2d at 907. The court affirmed a partial summary judgment holding that the life insurance policy was the decedent's separate property because it was issued before he was married. As a result, his mother was "entitled to its entire proceeds, less reasonable reimbursement for the amount of community interest in the value of the life insurance premiums to [the wife]." *Id.* at 908.

*Camp* and *McCurdy* firmly establish Natalie Anderson's right to reimbursement of one half of the premiums paid to maintain Policy One during her marriage to Anderson, in the amount of

7

$2,632.74. These cases do not establish the procedure Natalie Anderson must use to seek that reimbursement. Kelly relies on *Madrigal v. Madrigal*, 115 S.W.3d 32 (Tex. App.—San Antonio 2003, no pet.) (internal citations omitted). In *Madrigal*, the decedent obtained a life insurance policy while he was married to his wife, using community funds, but he named his former spouse as his beneficiary. *Id.* at 34. The court noted that the "spouse's right of recourse is first against the estate of the deceased spouse for reimbursement for his or her one-half interest in the funds disposed of in fraud. If there are insufficient assets in the deceased's estate, then the surviving spouse may pursue the proceeds of the policy, to the extent of her or his community interest, into the hands of the transferee." *Id.* at 35 n.1.

Under this approach, to the extent that a spouse of a deceased insured seeks reimbursement of community funds used during the marriage to pay for the premiums, reimbursement should first be sought from the estate, not from the life insurance proceeds. Natalie Anderson does not point to different authority.

Natalie Anderson's motion for summary judgment on her claim for reimbursement of premiums paid towards Policy One using community property funds is denied without prejudice, as a request that must wait until she first seeks reimbursement from the estate.

B.   The Policy Two Proceeds

Natalie Anderson argues that she is also entitled to $250,000, which is half of Policy Two's life insurance proceeds, because Policy Two was issued during her marriage to Anderson, entitling her to half of the proceeds under the inception-of-title rule, and because Anderson committed constructive fraud against the community estate by excluding Natalie Anderson from benefits under the Policy. It is undisputed that Policy Two was issued during the marriage. (Docket Entry No. 26 at 4; Docket Entry No. 28 at 4). The presumption under Texas law is that the Policy is

community property, and Natalie Anderson is "entitled to half the proceeds as her share of the community estate." *Amason v. Franklin Life Ins. Co.*, 428 F.2d 1144, 1146–47 (5th Cir. 1970).

Kelly argues that discovery is needed as to whether Policy Two was purchased using separate or community property funds and as to whether the designation of the four Anderson children as beneficiaries was fair. Kelly moves for a continuance under Rule 56(d) of the Federal Rules of Civil Procedure to pursue this discovery. Under Rule 56(d), a court may allow time for additional discovery if a nonmovant shows that without the discovery, it cannot present facts essential to justify its opposition. FED. R. CIV. P. 56(d). "Rule 56(d) permits 'further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022) (per curiam) (quoting *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013)).

Fraud against the community estate arises when a spouse disposes of the other spouse's interest in community property without the other's interest knowledge or consent. *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex. App.—Houston [14th Dist.] 1996, no writ). Whether Policy Two was purchased using separate funds or community property funds does make a difference to the determination of whether Natalie Anderson is entitled to half of the proceeds of Policy Two. *See Barnett*, 67 S.W.3d at 111 (discussing whether property had been mutated into separate property); *Barras v. Barras*, 396 S.W.3d 154, 163–64 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (explaining that the presumption of community property can be overcome by tracing to establish the separate origin of property through clear and convincing evidence).

Natalie Anderson points to evidence that Anderson transferred $5,000.00 four times— totaling $20,000—from their joint checking account in November 2020 to a separate USAA savings account that Anderson owned. (Docket Entry Nos. 26-3, 26-4). But as Kelly points out,

9

the fact that some community funds were transferred to Anderson's separate USAA Savings Account does not mean that those were the funds used to pay for the premiums. The joint checking account statement also shows that Anderson transferred $21,700 from another separate savings account that he owned, ending in -2861, before purchasing Policy Two. (Docket Entry No. 26-3; Docket Entry No. 28-9). Kelly asserts that discovery would permit her to trace whether Anderson purchased and maintained Policy Two with money from the joint checking account or with his separate property. The court agrees that the initial evidence raises a doubt as to whether Policy Two can be traced to community or separate property funds, and that more time would permit discovery into the facts relevant to this determination.

Even if there was no potential factual dispute material to determining whether the funds used to pay for and maintain Policy Two were community property funds, Kelly argues that under Texas law, the presumption that Natalie Anderson would be entitled to half of the insurance proceeds can be overcome if "the disposition of the surviving spouse's one-half community interest [was] fair." *In re Estate of Vackar*, 345 S.W.3d 588, 598 (Tex. App.—San Antonio 2011, no pet.). A court considers four factors

> [t]o determine whether a gift of [insurance] proceeds is fair . . . : (1) the size of the gift in relation to the total size of the community estate; (2) the adequacy of the estate remaining to support the surviving spouse in spite of the gift; (3) the relationship of the donor to the donee; and (4) whether special circumstances existed to justify the gift.

*Id.* (citing *Barnett*, 67 S.W.3d at 126). "Whether a gift of life insurance proceeds is fair is generally a question of fact to be determined by the fact-finder." *Id.* (citation omitted). "The existence and effect of constructive fraud should be finally determined only after development of all the facts." *Carnes v. Meador*, 533 S.W.2d 365, 371–72 (Tex. App.—Dallas 1975, writ ref'd n.r.e.).

Kelly points to some evidence that creates a factual dispute material to determining that the gift was fair. Kelly argues that additional time for discovery would reveal more evidence supporting her position. Kelly first notes that Natalie Anderson seeks $250,000 in life insurance proceeds, out of total community estate valued at $722,028.76. (Docket Entry No. 28-9). Kelly points to evidence that Natalie Anderson has already received all of Anderson's $200,000 Fidelity 401k. (Docket Entry No. 28-9). The new home that Natalie Anderson purchased during the marriage was purchased in her name only. (Docket Entry No. 28-3). Kelly notes that the competing claims are by the four children Anderson had with a different spouse, who predeceased him. Finally, Kelly emphasizes that Natalie Anderson had filed for divorce on December 21, 2020, less than two weeks after Anderson purchased Policy Two. (Docket Entry No. 28-11).

Kelly has shown that targeted discovery could create factual disputes material to determining whether Natalie Anderson is entitled to half of the proceeds of Policy Two. The discovery would include tracing the funds used to pay for and maintain Policy Two from Anderson's bank account, and inquiring into whether designating the four Anderson children as beneficiaries was "fair."

The motion for continuance is granted. The summary judgment motion is denied as to Policy Two and may be reurged after additional discovery.

## V.     Conclusion

Natalie Anderson's motion for summary judgment, (Docket Entry Nos. 26, 27), is denied without prejudice. Kelly's motion for a continuance, (Docket Entry No. 28), is granted. The remaining scheduling order and docket control deadlines are terminated. A status conference will be held on **July 29, 2022**, at 8:30 a.m. C.D.T., by video, in lieu of docket call, to set a new

scheduling and docket control order that permits additional time for discovery. A zoom link will be separately sent.

    SIGNED on July 15, 2022, at Houston, Texas.

                                                  Lee H. Rosenthal
                                        Chief United States District Judge